UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

MARK BENSON,

            Plaintiff,            Case No. 1:23-cv-268

v.                                     Honorable Paul L. Maloney

M. FARBER et al.,

            Defendants.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 10.) Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Washington, Artis, and Karnitz. The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants: (1) Plaintiff's official capacity claims; (2) Plaintiff's personal capacity claims for declaratory relief; and (3) Plaintiff's Fourteenth Amendment claims. Plaintiff's personal capacity Eighth Amendment excessive force claim for damages against Defendant Farber, as well as his

personal capacity Eighth Amendment failure to intervene claims for damages against Defendants Hermann, Landingham, Jimerson, Pannell, and Streit, remain in the case. The Court will also deny Plaintiff's motion to appoint counsel. (ECF No. 3.)

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. The events about which he complains, however, occurred at the Earnest C. Brooks Correctional Facility (LRF) in Muskegon Heights, Muskegon County, Michigan. Plaintiff sues MDOC Director Heidi E. Washington as well as the following LRF personnel: Warden Fredeane Artis; Sergeant Unknown Streit; Correctional Officers M. Farber, J. Hermann, C. Landingham, Unknown Jimerson, and Unknown Pannell; and Registered Nurse Mark Karnitz. Plaintiff indicates that he is suing all Defendants in their official and personal capacities. (ECF No. 1, PageID.2.)

Plaintiff alleges that on March 17, 2022, he was "cell rushed" by Defendants Farber, Landingham, Hermann, Jimerson, Pannell, and Streit, "for what they claimed was a mandatory lab draw and later claimed it was for a mandatory medication injection once [Plaintiff] filed a grievance." (*Id.*, PageID.2–3.) Once Plaintiff was restrained, Defendant Farber knelt on Plaintiff's testicles even though Plaintiff's "hands and feet were restrained and [he] was laying flat on [his] back, not resisting." (*Id.*, PageID.3.) Plaintiff alleges that Defendants Landingham, Hermann, Pannell, Jimerson, and Streit "failed to act on [his] wails for help." (*Id.*) Plaintiff alleges further that Defendant Karnitz was present during the incident and "refused to do a post-assessment as he was suppose[d] to do after such instances." (*Id.*)

Plaintiff filed a Prison Rape Elimination Act (PREA) complaint against Defendant Farber. (*Id.*) He submitted a kite to medical, asking to be seen "for lingering testicular pains." (*Id.*) Plaintiff

2

saw Defendant Karnitz on April 5, 2022. (*Id.*) Defendant Karnitz diagnosed Plaintiff with a bruised testicle and said it would "last for six more weeks." (*Id.*) Plaintiff claims that Defendant Karnitz tried to "cover up the wa[n]tonness of [D]efendant Farber by saying when [Defendant Farber] knelt on [Plaintiff's] testicles [Plaintiff] was fighting hard and it wasn't done intentionally." (*Id.*)

In July of 2022, Plaintiff was diagnosed with an infection and "told [he] had damage, possibly, to his sciatica from pressure." (*Id.*) On October 10, 2022, Plaintiff was diagnosed with orchialgia, caused by the trauma inflicted by Defendant Farber. (*Id.*, PageID.4.) Plaintiff states that orchialgia is also "known as chronic testicular pain or chronic scrotal contents pain." (*Id.*) He was "accommodated with an athletic supporter and prescribed Naproxen which finally helped the pain subside." (*Id.*)

Based on the foregoing, Plaintiff asserts an Eighth Amendment excessive force claim against Defendant Farber. (*Id.*) He also asserts Eighth Amendment failure to intervene claims, as well as Fourteenth Amendment claims, against Defendants Hermann, Pannell, Jimerson, Landingham, and Streit. (*Id.*) Plaintiff contends that Defendant Artis violated his Eighth and Fourteenth Amendment rights by "fail[ing] to discipline, prosecute, or otherwise deal with known excessive force and ultimately encouraging the continuation of the conduct." (*Id.*) Finally, Plaintiff alleges that Defendant Karnitz violated his First, Eighth, and Fourteenth Amendment rights by denying medical care after the use of force as well as by failing to report "the misconduct and then attempting to cover it up." (*Id.*, PageID.5.) Plaintiff seeks declaratory relief, as well as compensatory and punitive damages. (*Id.*)

## II.      Motion to Appoint Counsel

As noted above, Plaintiff has filed a motion to appoint counsel in this matter. (ECF No. 3.) Plaintiff contends that he requires counsel because he is currently in administrative segregation and has "limited access to the law library and limited knowledge of the law." (*Id.*, PageID.14.) He

3

asserts that counsel "would better enable [P]laintiff to present evidence and cross[-]examine witnesses." (*Id.*) Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993). The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances. In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel. *See Lavado*, 992 F.2d at 606. The Court has carefully considered these factors and determines that, at this stage of the case, the assistance of counsel does not appear necessary to the proper presentation of Plaintiff's position. Plaintiff's motion to appoint counsel (ECF No. 3) will, therefore, be denied.

### III. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at

679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Official Capacity Claims

As noted above, Plaintiff sues Defendants in their official and personal capacities. (ECF No. 1, PageID.2.) A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir.

1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous opinions, the United States Court of Appeals for the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See, e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).

Here, Plaintiff seeks declaratory relief, as well as compensatory and punitive damages. Official capacity defendants, however, are absolutely immune from monetary damages. *See Will*, 491 U.S. at 71; *Turker v. Ohio Dep't of Rehab. & Corr.*, 157 F.3d 453, 456 (6th Cir. 1998). Plaintiff's official capacity claims for damages will, therefore, be dismissed.

Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive relief constitutes an exception to sovereign immunity. *See Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex Parte Young* for prospective injunctive relief should not be treated as an action against the state. *Graham*, 473 U.S. at 167 n.14. Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Importantly, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Plaintiff, however, is no longer confined

at LRF, where he avers that Defendants Artis, Streit, Farber, Hermann, Landingham, Jimerson, Pannell, and Karnitz are employed. The Sixth Circuit has held that transfer to another prison facility moots a prisoner's claims for declaratory and injunctive relief. *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996). Where, as here, the inmate has been transferred away from certain defendants, it can no longer be said that the violation is "ongoing" or that any relief is "prospective" as applied to Plaintiff. Moreover, with respect to Defendant Washington, Plaintiff's complaint is devoid of any allegations suggesting that she is engaged in an ongoing violation of federal law. Plaintiff, therefore, cannot maintain his claims for declaratory relief against Defendants in their official capacities.

In sum, for the reasons set forth above, Plaintiff's official capacity claims against all Defendants will be dismissed.[1]

  **B.**  **Personal Capacity Claims**

    **1.**  **Claims Against Defendants Washington and Artis**

Plaintiff has named MDOC Director Washington as a Defendant because she is "responsible for the overall operation of the [MDOC] and each institution under its jurisdiction." (ECF No. 1, PageID.2.) He also names Warden Artis, alleging that she "fail[ed] to discipline, prosecute, or otherwise deal with known excessive force and ultimately encouraging the continuation of the conduct." (*Id.*, PageID.4.) Essentially, Plaintiff appears to suggest that Defendants Washington and Artis are ultimately liable for the constitutional violations discussed below.

Government officials, however, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at

---

[1] To the extent Plaintiff seeks declaratory relief against Defendants in their personal capacities, such claims will also be dismissed for the reasons set forth above.

676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Here, Plaintiff fails to allege facts suggesting that Defendants Washington and Artis encouraged or condoned the conduct of their subordinates, or authorized, approved, or knowingly acquiesced in the conduct. In fact, Plaintiff's complaint is devoid of facts regarding any actions or

inactions taken by Defendants Washington and Artis. Plaintiff's conclusory allegations of supervisory responsibility are insufficient to demonstrate that Defendants Washington and Artis were personally involved in the events described in Plaintiff's complaint. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. The Court, therefore, will dismiss Plaintiff's personal capacity claims against Defendants Washington and Artis.

### 2. First Amendment Claims

Plaintiff suggests that Defendant Karnitz violated his First Amendment rights by "failing to report [Defendant Farber's] misconduct and then attempting to cover it up." (ECF No. 1, PageID.5.) As noted above, Plaintiff alleges that Defendant Karnitz tried to cover up the incident "by saying when [Defendant Farber] knelt on [Plaintiff's] testicles [Plaintiff] was fighting hard and it wasn't done intentionally." (*Id.*, PageID.3.) Plaintiff, however, does not explicitly describe how such conduct violated his First Amendment rights. The Court, therefore, construes his complaint to assert a retaliation claim against Defendant Karnitz, as well as a claim that Defendant Karnitz's handling of Plaintiff's complaint violated his First Amendment rights.

#### a. Retaliation

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's

alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (discussing that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

Plaintiff engaged in protected conduct by filing a PREA complaint against Defendant Farber. (ECF No. 1, PageID.3.) Nevertheless, even assuming that Defendant Karnitz acted adversely by allegedly covering up Defendant Farber's actions, nothing in the complaint permits the Court to infer a retaliatory motive on Defendant Karnitz's behalf. Plaintiff's complaint does not even allege that Defendant Karnitz was aware of the PREA complaint filed by Plaintiff. Plaintiff's "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004). Any retaliation claim asserted by Plaintiff against Defendant Karnitz falls far short of the pleading requirements of Rule 8 of the

Federal Rules of Civil Procedure. The Court, therefore, will dismiss any such retaliation claim against Defendant Karnitz.

### b. Response to Complaint

Plaintiff's First Amendment rights to petition the government were not violated in any way by Defendant Karnitz's alleged cover-up of Defendant Farber's actions. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding that the right to petition protects only the right to address government; the government may refuse to listen or respond).

Moreover, any alleged cover-up by Defendant Karnitz did not bar Plaintiff from seeking a remedy for his complaint. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415–16 (6th Cir. 2014) (citing *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to seek redress is underscored by his *pro se* invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982). Even if Defendant Karnitz's actions impeded the grievance process, Plaintiff's right of access to the courts to petition for redress of his grievance (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821–24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were

improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 578 U.S. 632, 640–44 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470–71 (6th Cir. 2001). In light of the foregoing, Plaintiff has failed to state a cognizable First Amendment claim against Defendant Karnitz premised upon his alleged cover-up of Defendant Farber's actions.

### 3. Eighth Amendment Claims

#### a. Excessive Force and Failure to Intervene

Plaintiff contends that Defendant Farber violated his Eighth Amendment rights by using excessive force, and that Defendants Hermann, Pannell, Jimerson, Landingham, and Streit violated his Eighth Amendment rights by failing to intervene and stop the use of force. (ECF No. 1, PageID.4.) As noted above, Plaintiff alleges that Defendant Farber knelt on Plaintiff's testicles even though Plaintiff's "hands and feet were restrained and [he] was laying flat on [his] back, not resisting." (*Id.*, PageID.3.) Plaintiff alleges that Defendants Landingham, Hermann, Pannell, Jimerson, and Streit "failed to act on [his] wails for help." (*Id.*)

Plaintiff's claims must be analyzed under the Supreme Court authority limiting the use of force against prisoners. This analysis must be made in the context of the constant admonitions by the Supreme Court regarding the deference that courts must accord to prison or jail officials as they attempt to maintain order and discipline within dangerous institutional settings. *See, e.g., Whitley v. Albers*, 475 U.S. 312, 321–22 (1986).

Not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (holding that "[n]ot every push or shove . . . violates a prisoner's constitutional rights" (internal quotations

12

omitted)). On occasion, "[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law." *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002) (citing *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (internal quotation marks omitted); *Bailey v. Golladay*, 421 F. App'x 579, 582 (6th Cir. 2011). Given Plaintiff's allegations, the Court concludes that he has set forth a plausible personal capacity Eighth Amendment excessive force claim for damages against Defendant Farber.

Moreover, an officer is liable for another officer's use of excessive force where the defendant "'observed or had reason to know that excessive force would be or was being used' *and* 'had both the opportunity and the means to prevent the harm from occurring.'" *Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013) (emphasis in original) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)); *accord Alexander v. Carter ex rel. Byrd*, 733 F. App'x 256, 265 (6th Cir. 2018); *Partin v. Parris*, No. 17-6172, 2018 WL 1631663, at *3 (6th Cir. Mar. 20, 2018). Here, Plaintiff explicitly alleges that Defendants Landingham, Hermann, Pannell, Jimerson, and Streit were present during the use of excessive force by Defendant Farber, and his allegations suggest that these Defendants could have had the opportunity to stop the use of force, but did not do so. Plaintiff, therefore, has set forth plausible personal capacity Eighth Amendment failure to intervene claims for damages against Defendants Landingham, Hermann, Pannell, Jimerson, and Streit.[2]

---

[2] Although Plaintiff alleges that Defendant Karnitz was present during the use of force, he fails to allege facts suggesting that Defendant Karnitz was in a position to intervene and stop the actions of the correctional officers. Moreover, the duty to intervene and stop a use of excessive force does

### b. Denial of Medical Care

Plaintiff alleges further that Defendant Karnitz violated his Eighth Amendment rights by denying Plaintiff medical care following the use of excessive force. (ECF No. 1, PageID.5.) Plaintiff contends that Defendant Karnitz refused to conduct an assessment after the use of force by the correctional officers. (*Id.*, PageID.3.) Plaintiff avers that he did not see Defendant Karnitz until April 5, 2022, after Plaintiff submitted a kite concerning "lingering testicular pains." (*Id.*) Plaintiff was ultimately diagnosed with orchialgia on October 10, 2022. (*Id.*, PageID.4.)

"The Supreme Court has long recognized that the government has a constitutional obligation to provide medical care to those whom it detains." *Griffith v. Franklin Cnty.*, 975 F.3d 554, 566 (6th Cir. 2020) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Rhinehart v. Scutt*, 894 F.3d 721, 736–37 (6th Cir. 2018); *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004)). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle*, 429 U.S. at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). Deliberate indifference may be manifested by a medical professional's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

An Eighth Amendment claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective

---

not extend to medical providers. *See Ali v. McAnany*, 262 F. App'x 443, 446 (3d Cir. 2008); *Rogers v. Buchanan*, No. 3:12-CV-2458-M-BN, 2015 WL 3439145, at *11 (N.D. Tex. Mar. 27, 2015), *report and recommendation adopted as modified*, No. 3:12-CV-2458-M-BN, 2015 WL 3504518 (N.D. Tex. May 28, 2015); *Ledcke v. Pa. Dep't of Corr.*, No. 1:12-cv-1580, 2014 WL 12638878, at *7 (M.D. Pa. July 31, 2014).

component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore*, 390 F.3d at 899; *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The Eighth Amendment's subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart*, 894 F.3d at 738 (quoting *Farmer*, 511 U.S. at 842).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).

He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

Plaintiff's allegations are simply too conclusory to state an Eighth Amendment claim for denial of medical treatment against Defendant Karnitz. Plaintiff alleges only that Defendant Karnitz was present during the use of force and refused to assess him afterwards. Plaintiff, however, does not set forth any facts regarding any testicular pain at the time and what he told Defendant Karnitz—if anything—about his condition. Plaintiff does not suggest what treatment he required, nor does he suggest any consequences of not receiving treatment that day. It is "difficult to infer a serious medical need from the facts" as alleged by Plaintiff. *See Larkin v. Schroeder*, No. 2:20-cv-111, 2020 WL 4344985, at *5 (W.D. Mich. July 29, 2020). Moreover, although it is clear that Plaintiff disagrees with Defendant Karnitz's decision to not assess him on March 17, 2022, "a patient's disagreement with his physicians over the proper course of treatment alleges, at most, a medical-malpractice claim, which is not cognizable under § 1983." *Darrah*, 865 F.3d at 372 (citations omitted).

The Court recognizes that Defendant Karnitz saw Plaintiff on April 5, 2022, after Plaintiff submitted a kite complaining about lingering testicular pain, and diagnosed him with a bruised testicle. (ECF No. 1, PageID.3.) Moreover, Plaintiff was ultimately diagnosed with orchialgia on October 10, 2022. (*Id.*, PageID.4.) Plaintiff's complaint, however, is simply devoid of facts from which the Court could infer that Defendant Karnitz's denial of treatment on March 17, 2022, exacerbated Plaintiff's condition in any way. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has

not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679. There is nothing alleged in the complaint that might distinguish a deliberate indifference to Plaintiff's needs from simple negligence, which *Farmer* has held is not enough for an Eighth Amendment claim. *See Farmer*, 511 U.S. at 835 (holding that an Eighth Amendment violation requires a "state of mind more blameworthy than negligence"). Plaintiff's Eighth Amendment claim against Defendant Karnitz will, therefore, be dismissed.

### 4. Fourteenth Amendment Claims

Plaintiff also contends that the actions or inactions of Defendants Farber, Hermann, Landingham, Jimerson, Pannell, Streit, Karnitz, and Artis violated his Fourteenth Amendment rights. The Court construes Plaintiff's complaint to assert Fourteenth Amendment substantive due process claims against these Defendants.

"Substantive due process 'prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the concept of ordered liberty.'" *Prater v. City of Burnside*, 289 F.3d 417, 431 (6th Cir. 2002) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)). "Substantive due process . . . serves the goal of preventing governmental power from being used for purposes of oppression, regardless of the fairness of the procedures used." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 728 (6th Cir. 2011) (quoting *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996)). "Conduct shocks the conscience if it 'violates the decencies of civilized conduct.'" *Range v. Douglas*, 763 F.3d 573, 589 (6th Cir. 2014) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846–47 (1998)). Plaintiff's complaint does not allege any of these Defendants acted in any way that the Court could conclude rises to the level of conscience-shocking.

Furthermore, "[w]here a particular [a]mendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that [a]mendment, not

the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" *Albright v. Oliver*, 510 U.S. 266, 273–75 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 394 (1989)) (holding that the Fourth Amendment, not substantive due process, provides the standard for analyzing claims involving unreasonable search or seizure of free citizens). If such an amendment exists, the substantive due process claim is properly dismissed. *See Heike v. Guevara*, 519 F. App'x 911, 923 (6th Cir. 2013). Here, the First and Eighth Amendments apply to Plaintiff's claims for relief. Consequently, any intended Fourteenth Amendment substantive due process claims will be dismissed.

## Conclusion

For the reasons set forth above, the Court will deny Plaintiff's motion to appoint counsel (ECF No. 3). Moreover, having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Washington, Artis, and Karnitz will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants: (1) Plaintiff's official capacity claims; (2) Plaintiff's personal capacity claims for declaratory relief; and (3) Plaintiff's Fourteenth Amendment claims. Plaintiff's personal capacity Eighth Amendment excessive force claim for damages against Defendant Farber, as well as his personal capacity Eighth Amendment failure to intervene claims for damages against Defendants Hermann, Landingham, Jimerson, Pannell, and Streit, remain in the case.

An order consistent with this opinion will be entered.

Dated:   April 20, 2023                                        /s/ Paul L. Maloney
                                                               Paul L. Maloney
                                                               United States District Judge